**Ned GILL, Appellant,**

v.

**HOUSTON PRODUCE TERMINAL, INC., et al., Appellees.**

**No. 214.**

Court of Civil Appeals of Texas.

Houston (14th Dist.)

July 2, 1969.

Rehearing Denied July 30, 1969.

Lewis Cutrer, Cutrer, Jefferson & Reich, Houston, for appellant.

Edmund L. Cogburn, Dow, Cogburn & Friedman, Houston, for appellees.

TUNKS, Chief Justice.

Houston Produce Terminal, Inc., is the owner of a group of buildings designed for use by produce dealers in the marketing of their goods. These buildings are divided into sections called "units." On June 17, 1955, Houston Produce Terminal, Inc., by written instrument, leased units 11 to 22, inclusive, in its building C to a partnership called Tinney Produce Company. The lease was for a term of 10 years beginning November 1, 1955 and gave the lessee an option to extend it for another ten-year term. It provided for a rental of $1,800 per month ($150 per month per unit). By one of its terms the lease provided: "That this lease will not be assigned or the premises sublet in whole or in part without first securing the permission of the Lessor thereto, and in this connection the Lessor agrees to not unreasonably withhold such consent." The lease agreement also provided for payment by lessee of reasonable attorney's fees incurred by the lessor in the event of default by lessee and suit by the lessor.

As a part of the lease transaction Houston Produce Terminal, Inc., loaned Tinney Produce Company $58,000 to be used in the purchase of fixtures and equipment to be installed in the leased premises. This loan was payable monthly and was secured by a lien on the fixtures and equipment. In 1958, the partnership borrowed an additional $200,000 from a bank. At the bank's request the partnership was organized into a corporation, the partners becoming the shareholders. The shares were pledged to the bank as security for the loan and the bank was also given a lien on certain equipment installed on the premises and other security. Ned Gill, not one of the partners nor a shareholder, personally guaranteed the payment of the bank loan. In 1959, Ned Gill personally loaned Tinney Produce Company another $50,000 which loan was secured by liens similar to those given to the bank but inferior thereto.

In 1960, Tinney Produce Company became insolvent and defaulted on its note to the bank. Mr. Gill, under the terms of his guaranty agreement, was required to pay the bank about $59,000. The bank assigned to him its securities. The right of

Tinney Produce Company to do business as a corporation was forfeited for failure to pay franchise taxes. Gill foreclosed his lien on the capital stock of the corporation and thus became its sole shareholder.

An involuntary petition in bankruptcy was filed against Tinney Produce Company. At a creditor's meeting Gill agreed to temporarily continue the rental payment to Houston Produce Terminal in order to protect the value of the equipment on the premises on which equipment he had a lien. He was thereupon given authority to collect the rentals from the sublessees occupying some of the units. Subsequently he bought the equipment at a trustee's sale. Still later, by order of the referee in bankruptcy, the leasehold estate of Tinney Produce Company in the property in question was abandoned as an asset of the bankrupt.

From 1960 to December, 1964, Gill personally made the rental payments due to Houston Produce Terminal on the lease covering the Tinney Produce Company premises and made the monthly payments on the $58,000 loan made by Houston Produce Terminal to Tinney Produce Company, which debt was ultimately paid in full. Some of the units were occupied by sublessees and Gill, as authorized in the bankruptcy proceeding, collected the rents from them. The rental payments made by Gill to Houston Produce Terminal exceeded the amount of the rents collected by him from sub-lessees. At the time Gill began paying the rent on the premises, he had an enforceable lien on the equipment on the premises. The equipment had more value in place than it would have had if removed. As noted above, Gill's lien on the equipment was foreclosed and he became the owner of it. Gill's testimony was that he maintained the lease by paying the rent with the purpose of finding someone to whom he could assign the lease and sell the equipment at its in place value. There is no evidence that Gill ever executed any written document by which he assumed personal responsibility for the rentals to be paid under the terms of the lease.

Gill did not find anyone to whom he could assign the lease and sell the equipment. Upon his failure to pay the December, 1964 rental, Houston Produce Terminal filed suit in forcible detainer in the justice court and another suit in the district court to collect the rents due. The forcible detainer suit was tried and resulted in judgment for the defendant. It was appealed to the county court and was set for trial on July 15, 1965. On the morning that it was set for trial the parties entered into an agreement by which that case was settled. By that settlement it was agreed, generally, that Houston Produce Terminal should buy from Gill the equipment on the leased premises for $35,000, that the settlement was without prejudice to Houston Produce Terminal's suit for rents or to Gill's defense thereto, except that no claim should be made for rent accruing after July 15, 1965; and that Gill quit claim any right, title or interest in the premises in question.

By its trial pleading in the suit filed in the district court, Houston Produce Terminal sought recovery on the lease contract for the rents for the period beginning December 1, 1964 and ending July 15, 1965, together with attorney's fees. An alternative allegation sought recovery of reasonable rental value, alleged to be $1,800 per month. The answer of the defendant, Ned Gill, denied liability on the lease. It alleged that at the time the defendant started personally paying the rent on the premises Houston Produce Terminal, by its officers, orally agreed that if the defendant found a buyer for his equipment who would assume the lease, it would consent to an assignment of the lease to that buyer, and that the plaintiff had breached such agreement. The defendant, Gill, also alleged that the plaintiff was guilty of fraud in failing to cooperate with him in seeking such a buyer and assignee and in connection with the settlement agreement to the forcible detainer suit. The defendant, Gill, also alleged that Houston Produce Terminal, through its officers, entered into a conspir-

acy with others to prevent the defendant from assigning the lease and selling the equipment in place. Because of this conduct it was alleged that the plaintiff was estopped to claim rent from the defendant. These allegations were made both as defenses and as basis for a cross-action wherein Gill sought recovery of actual and exemplary damages. By way of further answer he alleged that he had never executed a written assumption of the duties under the lease, pleaded the statute of frauds and alleged that there was an accord and satisfaction and a partial failure of consideration.

The plaintiff, by supplemental petition, filed a sworn denial of the authority of its officers to make the oral agreement alleged by the defendant and cross plaintiff and alleged that such agreement was unenforceable under the statute of frauds.

The trial was to a jury. After the presentation of the evidence, the trial court concluded, as a matter of law, that the defendant had assumed the obligation of the lessee under the terms of the lease and, as such, was liable for the rent on the premises for the period beginning December 1, 1964 and ending July 15, 1965· and was further liable for reasonable attorney's fees. The parties stipulated as to the figure representing reasonable attorney's fees. Pursuant to special issues submitted by the trial court the jury made the following findings: 1. Houston Produce Terminal withheld its consent to the assignment of the lease to a man named Wells. 2. Such withholding of consent was unreasonable. 3. At the date that Houston Produce Terminal so unreasonably withheld its consent to the assignment of the lease to Wells, Ned Gill's interest in the fixtures on the premises had a value of $51,500. 4. Houston Produce Terminal withheld its consent to the assignment of the lease to a firm called Big S Produce Company. 5. Such withholding was not unreasonable. 7. At the time of the settlement of the forcible detainer case Simon Coplin, president of Houston Produce Terminal did not promise Ned Gill

that it would not resell the fixtures on the leased premises to National Fresh Fruit and Vegetable Company, Inc. 9. At the time of the settlement of the forcible detainer case Simon Coplin did promise Gill that Houston Produce Terminal would not resell the fixtures to Grocers Supply Co., Inc. 10. But for such promise Gill would not have entered into the settlement agreement. 11. On July 15, 1965, the reasonable market value of Gill's interest in the fixtures on the premises was $48,000.

The trial court granted plaintiff's motion to disregard the jury's answers to special issues 1, 2, 3 and 8, 9 and 10 and rendered judgment for the plaintiff for the rents provided for in the lease, for attorney's fees, interests and costs. Judgment was rendered that cross-plaintiff take nothing on his cross-action. Defendant and cross-plaintiff's amended motion for new trial was overruled and appeal was perfected.

The first aspect of the case to be discussed relates to the trial court's holding, as a matter of law, that Ned Gill became obligated as lessee under the terms of the written lease dated June 17, 1955.

There is no evidence of any written, contractual assignment by Tinney Produce Company to the appellant nor, as noted above, of any written assumption by him of the duty of the lessee provided in the lease. There is authority for the proposition that such contractual assignment and assumption would have been subject to the appellant's plea of the statute of frauds. 3995, V.A.T.S. (now Section 26.01, Texas Business and Commercial Code, V.T.C.A.). See Darden v. Sullivan, Tex.Civ.App., 374 S.W.2d 942, no writ hist.

■ However, the plaintiff has not contended that Gill's assumption of the position of lessee under the lease was pursuant to a contractual arrangement between him and the produce company. When Gill foreclosed his pledgee's lien on the corporate stock of Tinney Produce Company, he became the sole shareholder of that corporation. As such shareholder, when Tinney

Produce Company's corporate existence ceased, Gill became, by operation of law, the owner of its assets, subject to the rights of creditors. Humble Oil & Refining Co. v. Blankenburg, 149 Tex. 498, 235 S.W.2d 891. One of the corporate assets so acquired by him was the leasehold estate in question. Thus his acquisition was by a legal process to which the statute of frauds has no application.

It is true that the termination of the corporate existence of Tinney Produce Company did not impose on Gill personal liability for corporate debts. There was no evidence of facts which would have justified a disregard of the corporate entity of Tinney Produce Company so as to render Gill, its sole shareholder, liable for its debts. See Bell Oil & Gas Co. v. Allied Chemical Corp., (Tex.Sup.Ct.), 431 S.W.2d 336. Gill could have, if he had wanted to do so, renounced the leasehold estate and, having done so, would have had no personal liability for the rent thereunder. He could not, however, take over the benefits of the leasehold estate and avoid the liability attached thereto. Evons v. Winkler, Tex.Civ.App., 388 S.W.2d 265, ref., n. r. e.

Appellant argues that he did not assume the duties under the Tinney Produce Company lease. It is his position that his occupancy of the leased premises and payment of rent from 1960 to 1964, was under a separate oral agreement between him and Houston Produce Terminal providing for his temporary occupancy until he could find a buyer for the equipment. The record conclusively refutes that contention. During the time that Gill was paying the rent to Houston Produce Terminal some of the units were occupied by sub-lessees from whom Gill collected rent. The record does not show all of the contracts between Gill and these sub-lessees but one such contract shows conclusively that Gill's occupancy was not that of a month-to-month tenant under an oral agreement but was by virtue of his appropriation to himself of the benefits of the Tinney Produce Company's written lease. On October 1, 1962, Gill, as lessor, entered into a sublease agreement covering two of the units. This lease recites the following:

"(1) That Lessor now holds a valid lease from Houston Produce Terminal, Inc. as Lessee of Units 11 through 22 in Building C of the Houston Produce Terminal, Inc., and by this Instrument subleases to the above named Lessee that portion of said described premises which is known as Units 11 and 12 and is also known as 3124 Produce Row in the City of Houston, Texas under the following terms and conditions.

"(1-A) The term of this sublease shall be from October 1, 1962 until October 1, 1965, said term being described as the primary term. The term of this sublease may be extended for a secondary term of ten years at the option of the Lessee provided the Lessee gives notice in writing to the Lessor named in the first unnumbered paragraph of this Instrument at least sixty (60) days before the expiration of the primary term at his last known business address by registered United State mail .........................
...................................

"(2-H) Lessor warrants that he has title to said property and that same is free and clear of all encumbrances, except the reversionary rights of the primary Lessor, Houston Produce Terminal, Inc."

In 1966, a lawsuit was pending in which suit Ned Gill had sued sub-lessee of units in the building. In response to interrogatories propounded to him in that case Gill replied,

"On or about May 31, 1961, Plaintiff, Ned Gill, foreclosed on the capital stock of Tinney Produce Company, Inc., which note and capital stock had been assigned to the Plaintiff, Ned Gill, by the Bank of Texas of Houston, Texas, on or about July 8, 1960. By virtue of such foreclosure, Ned Gill became the owner of the leasehold known as Units Nos. 11 through

22 in building 'C' of the Houston Produce Terminal, Inc."

On occasions, Gill undertook to negotiate sale of the equipment owned by him and located on the premises. These negotiations were conditioned on his ability to effect an "assignment" of the Tinney lease to the purchaser. In his sworn pleading in this case, one basis for his defense and cross action is the alleged wrongful refusal of Houston Produce Terminal to agree to his "assignment" of the Tinney lease to prospective purchasers of his equipment.

Under these facts it was established as a matter of law that Gill appropriated to himself the benefits of the Tinney lease, not only by occupying the premises but also by executing a long term sublease. The trial court correctly held that he became obligated as lessee under the lease.

In 1963, one L. O. Wells, doing business as Imperial Cold & Dry Storage Co., took possession of and began operating his business out of ten of the twelve units covered by the Tinney lease. Wells' occupancy of the premises was pursuant to an oral agreement with Gill. Thereafter there were negotiations between Gill and Wells for the sale of the fixtures in those units. The tentative figure discussed was $65,000. In response to special issues 1, 2 and 3, the jury found that Houston Produce Terminal unreasonably withheld its consent to the assignment of the Tinney lease from Gill to Wells and that at the date of such proposed assignment the fixtures owned by Gill and located on the premises had a value of $51,-500. Gill made a motion for judgment on the verdict and submitted a proposed form of judgment. That proposed form of judgment recited a recovery by Gill on his cross-action, pursuant to the jury's answers to special issues 1, 2 and 3, of $16,500. The court overruled that motion and granted the plaintiff's motion to disregard the jury's findings to these issues.

■ Findings of the jury in answer to special issues 1, 2 and 3 do not constitute a factual basis for a recovery of damages on the cross-action. Standing alone they were wholly immaterial. They do not furnish a basis for determining the amount of damages sustained as the result of the lessor's breach of the contract. While Gill and Wells had been negotiating a possible sale contract, its terms had not been agreed upon. With reference to those negotiations Wells testified, "He had a $65,000 figure in the contract and I hadn't agreed to that." The attorney who had represented Wells testified, "We were never able to have an agreement that was wholly acceptable to Mr. Wells and Mr. Gill, therefore, it was never consummated." Thus the record did not conclusively show that there was a binding contract obligating Wells to buy the fixtures for $65,000 if the lessor approved the assignment of the lease to him. The jury was not asked to find, as a fact, that such contract existed. Under those circumstances it cannot be said that the jury's answer to the first three special issues permitted a computation of damages based upon the difference between the market value of the fixtures and the price at which they could be sold but for the lessor's breach of its agreement not to withhold consent to the assignment unreasonably. See Rector v. De Arana (Tex.Sup.Ct.), 398 S.W.2d 911.

Furthermore, the difference between the price at which the fixtures could have been sold (if a contract to sell them had been shown) and their market value is not the measure of damages sought by the cross-plaintiff on his motion for judgment on the verdict. The $16,500 for which he sought judgment based on the jury's answer to special issues 1, 2 and 3 was the difference between the $51,500 found by the jury to be the market value of the fixtures and the $35,000 cash which Gill received in the compromise settlement of the forcible detainer suit. The jury's answers to these special issues did not furnish a basis for recovery of damages so computed. The value of the fixtures at the time such consent was withheld was not necessarily their val-

ue at the time the forcible detainer case was settled. In fact the jury found, in answer to special issue 11 that their value at such later date was $48,000. Also the $35,000 cash was not all the consideration received by Gill in that settlement. He was, for example, released from any liability for future rents under the lease.

The trial court properly overruled the cross-plaintiff's motion for judgment based on the jury's answers to special issues 1, 2 and 3 and properly granted cross-defendant's motion to disregard those answers.

In addition to his motion for judgment for $16,500 based on the jury's answers to the first three special issues, the cross plaintiff moved for judgment for $13,000 based on the jury's answers to special issues 9, 10 and 11. Those answers were to the effect that at the time of the settlement of the forcible detainer case, Coplin, cross-defendant's president, promised Gill that Houston Produce Terminal would not resell the fixtures to a firm known as Grocer's Supply Co. and that but for such promise Gill would not have made the settlement agreement. The jury also found that at the date of such settlement agreement the market value of the fixtures was $48,000. His contention is that such finding entitled him to recover $13,000, the difference between the $35,000 he received in the settlement agreement and the $48,000 value of the property. We are wholly unable to see any theory on which such findings would entitle the cross-plaintiff to such measure of damages. The defendant's brief, which is more than 180 pages long, fails to point out any such theory. Even if the breach of such promise could have given rise to any element of damage the jury's finding would not have served as a basis for judgment for cross-plaintiff. The fixtures were not resold to Grocer's Supply Company, they were resold to National Fresh Fruit & Vegetable Co., Inc., and the jury found that Coplin did not promise not

to sell to that buyer. In this respect, too, the trial court properly overruled the cross-plaintiff's motion for judgment and disregarded such findings.

The appellant also complains of the trial court's refusal to submit 36 other special issues requested by him. Some of those requested special issues relate to appellant's contention that his occupancy of the lease premises was under an oral contract rather than by the assumption of the Tinney lease. As we have held, the trial court properly held, as a matter of law, that appellant assumed the duties of the lessee under the Tinney lease so that the refusal of those issues was not error. Others of the requested special issues relate to the cross-plaintiff's allegations of fraud and conspiracy on the part of the cross-defendant. There was no evidence of any such fraud or conspiracy and the issues relating thereto were properly refused. Finally the cross-plaintiff requested issues as to exemplary damages. Since the cross-plaintiff did not show a right to recover actual damages the trial court did not err in refusing to submit issues as to exemplary damages. Texas Electric Service Co. v. Linebery, Tex.Civ.App., 333 S.W.2d 596, no writ hist.; Giraud v. Moore, 86 Tex. 675, 26 S.W. 945.

It is also to be noted that the issues requested and refused are not individually identified by number, by letter or otherwise. Some of them are requested to be submitted conditionally upon the affirmative answer to some other unidentified issue. We cannot say that it is error to refuse to submit an unidentified issue, the answering of which is to be predicated on the affirmative answer to some other unidentified issue.

The points of error relating to the trial court's refusal to submit requested special issues are overruled. The judgment of the trial court is affirmed.